UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| H.B., a minor,<br>by and through his natural mother<br>JENNIFER BACKES,<br><br>      Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>      Defendant. | Case No. 2:19-cv-04187-NKL |

# ORDER

Before the Court is Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Doc. 13. For the reasons stated below, Defendant's motion is granted.

## I. BACKGROUND

On June 17, 2016, Plaintiff H.B. and his father visited Osage Bluff Campground on the banks of Truman Lake in Benton County, Missouri. Doc. 18-1. Near the campground is a boat ramp and an adjacent dock extending over the water, and Plaintiff and his father planned to launch their boat into Truman Lake using the ramp. *Id*. While Plaintiff's father was launching the boat from the ramp, Plaintiff stood on the adjacent dock, helping his father load the boat into the lake. *Id*. When Plaintiff walked back toward the shore to exit the dock, he slipped and fell on the wet metal tread plate connecting the dock to the boat ramp, resulting in injury. *Id*. Plaintiff claims that this recreational area is owned and maintained by the United States Army Corps of Engineers ("USACE"), and that USACE failed to design and maintain the boat ramp and dock in a safe

manner, causing Plaintiff's injuries. For the purposes of Defendant's motion to dismiss, Defendant accepts the above as true.

The Osage Bluff Campground includes an area for camping, as well as a separate area with a restroom and the boat ramp and dock where Plaintiff was injured. Doc. 18-1. There is no fee to enter to the grounds of Osage Bluff Campground area. Doc. 13-1. USACE does not assess a fee for any use of the dock, visitor centers, drinking water, wayside exhibits, roads, scenic drives, overlook sites, picnic tables, restrooms, or surface water areas. *Id*. Visitors can without cost enter the campground, as well as use the dock for sightseeing, photography, or other casual uses, and any boater on Truman Lake can moor to and walk onto the dock to, for example, transfer items or people or to use the restroom facilities. *Id*; Doc. 19, p. 2.

However, in order to launch a boat or vessel from the boat ramp, a visitor is required to pay a fee. Doc. 13-1. USACE collects this fee in two different ways. For those not intending to camp, a visitor can pay a $3.00 "Day Use" fee, which is charged per vessel for each day the boat ramp is used. *Id*. Payment of this fee is not required unless a visitor's use of the boat ramp includes launching a boat or vessel. *Id*. A self-pay station to pay the "Day Use" fee is located at the top of the boat ramp for those who want to launch a boat there. Doc. 18-1. Alternatively, a visitor who also intended to camp could pay a campsite fee, which is charged per campsite for each day the campsite is used. Doc. 13-1. The campsite fee amount varies depending on campsite amenities, and it entitles a visitor to use a designated campsite and to launch a vessel from the boat ramp for each day that the camping permit is valid. *Id*. Plaintiff's father paid the campsite fee, which entitled Plaintiff and his father to camp at a campsite and to use the boat ramp to launch their boat into Truman Lake. Doc. 18-1.

## II. LEGAL STANDARD

Defendant moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), asserting that the Court lacks subject matter jurisdiction over this action. "It is elementary . . . that a district court has broader power to decide its own right to hear the case than it has when the merits of the case are reached. Jurisdictional issues, whether they involve questions of law or of fact, are for the court to decide." *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990) (internal quotations and citations omitted).

A motion to dismiss for lack of subject matter jurisdiction can assert either a facial attack or a factual attack on jurisdiction. Here, Defendant asserts a factual attack to the Court's subject matter jurisdiction, and each party has submitted an affidavit in support of its position. "[I]n a factual attack, the existence of subject matter jurisdiction is challenged in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered. Thus, the nonmoving party [does] not enjoy the benefit of the allegations in its pleadings being accepted as true by the reviewing court." *Branson Label, Inc. v. City of Branson, Mo.*, 793 F.3d 910, 914–15 (8th Cir. 2015) (internal alterations and quotations omitted).

On a 12(b)(1) factual challenge, considering evidence beyond the Complaint does not convert a Rule 12(b)(1) motion to a Rule 56 motion for summary judgment, and a district court is free to "weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Osborn*, 918 F.3d at 730; *see also Titus v. Sullivan*, 4 F.3d 590, 593 n.1 (8th Cir. 1993) ("[T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." (quoting *Mortenson v. First Fed. Sav. & Loan Ass'n*, 549 F.2d

884, 891 (3d Cir. 1977)). "[T]he party invoking federal jurisdiction must prove jurisdictional facts by a preponderance of the evidence." *Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir. 2018).[1]

Plaintiff asserts that the Court has subject matter jurisdiction here pursuant to the Federal Tort Claims Act. *See* 28 U.S.C. §§ 2671 et seq. "Sovereign immunity shields the federal government from suit absent its consent." *Croyle by & through Croyle v. United States*, 908 F.3d 377, 381 (8th Cir. 2018). However, "[t]he FTCA waives the Government's sovereign immunity for some tort claims, authorizing private suits for negligence of Government agents." *Id*. The FTCA "confers subject matter jurisdiction for suits against the United States in 'circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir. 2018) (quoting *FDIC v. Meyer*, 510 U.S. 471, 477, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)).

---

[1] A defendant making a factual challenge to jurisdiction typically requests an evidentiary hearing on the issue. *See Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). Defendant did not do so here in the Suggestions in Support of its Motion to Dismiss. However, in its Reply Defendant requests an evidentiary hearing if the Court determines that the declaration from Plaintiff's father introduces facts genuinely conflicting with the United States' evidence showing it charges no admission or entry fees. The Court has considered both parties' evidence appended to their briefing and finds no genuine factual conflict despite the parties' disagreement as to how the fee here should be characterized. Although Plaintiff's father Mr. Backes states in an affidavit that Defendant charges "a fee to members of the public for entry into and use of the Campground" and a "fee for entry onto and use of the boat ramp and the boat ramp dock at the Osage Bluff Campground," when placed in context of Plaintiff's Suggestions in Opposition to the Motion to Dismiss, it becomes clear that Plaintiff's position is that a fee for use of the campground and use of the boat ramp necessarily entails a fee to enter those facilities because in order to use land, one must enter that land first. *See* Doc. 18, p. 6. ("[O]ne cannot typically 'use' land without first entering onto it. So, a fee for use of land is a fee for entry.") Neither Mr. Backes' affidavit nor Plaintiff's Opposition asserts that Defendant imposes a fee solely to enter the Osage Bluff Campground, the boat ramp, or the boat dock irrespective of whether that entrance is followed by launching a boat or using a campsite. Therefore, the Court sees no need to hold an evidentiary hearing on the matter.

Because the FTCA removes the United States' immunity only where a private landowner could be liable, the Court must determine whether an individual landowner could be liable for Plaintiff's injury under Missouri law. Defendant claims it is not liable under Missouri law, because the Missouri Recreational Use Act (RUA) creates "tort immunity for landowners who open their land to the public free of charge for recreational use." *Foster v. St. Louis Cty.*, 239 S.W.3d 599, 601 (Mo. banc 2007); *see also* Mo. Rev. Stat. § 537.346 ("[A]n owner of land owes no duty of care to any person who enters on the land without charge to keep his land safe for recreational use . . ."). The RUA defines a "charge" as,

> the admission price or fee asked by an owner of land or an invitation or permission without price or fee to use land for recreational purposes when such invitation or permission is given for the purpose of sales promotion, advertising or public goodwill in fostering business purposes.

Mo. Rev. Stat. § 537.345. The dispute here concerns whether Defendant has opened its land to the public free of charge for recreational use in light of the fee charged to launch a boat from the boat ramp.

### III.  ANALYSIS

Defendant argues that it is entitled to immunity under RUA, because the USACE does not charge any admission price or fee to any area, including the campground, the boat ramp, and the dock where Plaintiff fell. Rather, the fee charged is only for a specific use—in order to launch a boat or vessel from the boat ramp into Truman Lake. Plaintiff responds that a fee for use of the boat ramp to launch a boat is a "charge" under Missouri law, and therefore Defendant can be held liable for injuries caused by a dangerous condition in that area. Specifically, Plaintiff contends that you cannot use the boat ramp and dock to launch a boat without being admitted to the boat ramp and dock.

5

"The interpretation of the various recreational use statutes is controlled by the precise language of each statute." *Wilson v. United States*, 989 F.2d 953, 956 (8th Cir. 1993). "The primary rule of statutory interpretation is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words in their plain and ordinary meaning." *State ex rel. Evans v. Brown Builders Elec. Co.*, 254 S.W.3d 31, 35 (Mo. 2008). In determining the meaning, the language "must be considered in context and sections of the statutes in pari materia, as well as cognate sections, must be considered in order to arrive at the true meaning and scope of the words." *Id*.

The RUA defines a "charge," in relevant part, as an "admission price or fee asked by an owner of land." Mo. Rev. Stat. § 537.345. Each of the three RUA provisions referencing a "charge" further link the "admission price or fee" to a visitor's entrance. *See* Mo. Rev. Stat. § 537.346 ("[A]n owner of land owes no duty of care to any person who enters on the land without charge"); § 537.347 (describing the lack of liability for "an owner of land who directly or indirectly invites or permits any person to enter his or her land for recreational use, without charge"); § 537.348 (providing that the RUA does not limit landowner liability for "injury suffered by a person who has paid a charge for entry to the land").

Plaintiff first argues that in reading the definition of "charge," the Court should separate out "admission price or fee" to mean that either an "admission price" or a "fee" unrelated to admission will constitute a charge. However, even if the Court were to accept Plaintiff's argument, as discussed above, in each instance that the RUA discusses a "charge," it further qualifies that it is a charge associated with entry.

In support of its argument that it is entitled to immunity, Defendant cites to *Anderson v. Union Electric Company*, 463 S.W.3d 783 (Mo. banc 2015). In *Anderson*, two children swimming

near their family's dock were killed when stray electrical current from the dock entered the lake water. Defendant Union Electric owned the lake and used a permit program to impose requirements on lakefront landowners seeking to build, maintain, or use docks extending over the lake. *Id*. at 784–85. The permits also regulated the manner by which owners could supply electricity to their docks. *Id*. at 785. In connection with these permits, landowners were charged various fees including a "use fee." *Id*. Plaintiff, the mother of the children, alleged that UE was negligent in its duties connected to its permitting and regulation of the docks and dock electricity, causing the children's death. *Id*.

The Missouri Court of Appeals determined that the "alleged use fee removes this case from the provisions of the RUA" because defendant "charged them a user fee; the user fees were a condition of the [plaintiff's] family's use and enjoyment of their dock, which, not so coincidentally, was adjacent to and sitting on top of, the lake. Thus, any 'use' of the dock necessarily involved 'accessing' the lake." *Anderson v. Union Elec. Co.*, No. WD76927, 2014 WL 2574628, at *3 (Mo. Ct. App. June 10, 2014). The Missouri Court of Appeals reasoned that even though plaintiff "was not charged an admission price each time they entered the lake from their dock," the statute "defines 'charge' as 'the admission price **or fee** asked by an owner of land'" and therefore "the 'user fee' charged by [defendant] removes [defendant] from the immunity protection of the RUA." *Id*. (emphasis in original).

Upon transferring the case and assuming jurisdiction over the appeal, the Supreme Court of Missouri rejected this analysis. *Anderson*, 463 S.W.3d at 786. The Supreme Court of Missouri reasoned that the dock permit was not an "admission fee" paid to obtain defendant's permission to enter the lake, because plaintiff and her children "were free to enter the Lake as often as they wished without paying an 'admission fee' to [defendant]." *Id*. at 787.

The Supreme Court of Missouri further rejected the *Anderson* plaintiff's argument that because the children entered the lake using the dock, the fee for the dock constituted an entrance fee. *Id*. It reasoned that there is "no basis in the statute" for this distinction, and that "[t]he fees that [plaintiff] paid for her dock permit were for the privilege of building and using the dock. The 'charge' referred to in section 537.346, on the other hand, is only an 'admission price or fee' for the privilege of entering and using the lake." *Id*. at 787–88. *See also id*. at 787 (citing the Supreme Court of Missouri decision *Foster v. St. Louis Cty.,* 239 S.W.3d 599, 601 (Mo. banc 2007) for the proposition that "even though [defendant] charged fees for the use of certain picnic facilities in the park, it did not charge anyone—including those intending to picnic—an 'admission fee' to enter the park.")

As an initial matter, under federal law USACE is permitted to charge certain "fees for use of developed recreation sites and facilities," but prohibited from collecting "entrance or admission fees" at lake and reservoir public recreation areas. *See* 16 U.S.C. § 460d–3(a)–(b). However, merely labeling a fee a "fee for use" rather than an "admission fee" does not end the inquiry; otherwise, landowners charging admission could immunize themselves simply by re-classifying their charges, resulting in an untenable expansion of the RUA's scope which would be inconsistent with its original purpose. Rather, it is the nature of the fee here that determines whether it is an admission price or fee.

Viewing the specific facts presented here, the fee imposed to launch a boat or vessel does not constitute an "admission price or fee" as that term is used in the RUA. Similar to *Anderson*, the fee paid was for the privilege of using the ramp to launch a vessel, not for entering the ramp or the dock. Visitors can use the area for free for sightseeing, photography, or other casual uses,

8

and any boater on Truman Lake can moor to and walk onto the dock to transfer items or people, or to use the restroom facilities.

The Eighth Circuit's interpretation of the RUA, favorably cited by the Supreme Court of Missouri in *Anderson*, further supports this interpretation. *Wilson*, 989 F.2d 953. In *Wilson*, the issue was whether the $2.00 per-person fee paid by the members of a boy scout troop to stay overnight in a building at the U.S. military post Fort Leonard Wood was a "charge" under the RUA where visitors could otherwise freely enter the grounds of Fort Leonard Wood without cost. *Id*. at 956–57. One evening during the troop's stay, three boys took aluminum pipe stacked outside the bunk and raised it to come into contact with a power line that ran above the bunk, killing one of the boys. *Id*. at 955. The Eighth Circuit found that the fee charged was paid "for the right to stay overnight in [the military bunk]," and that plaintiffs had "failed to present any evidence that the fee was required in order to enter Fort Leonard Wood." *Id*. at 957. Rather, "the scouts paid the $2.00 fee to bunk in [the military bunk], but entered the park without paying a fee" and "could have used Fort Leonard Wood without making this $2.00 payment if they had chosen not to stay overnight." *Id*. at 957. The area in which they were injured was not the military bunk facility but rather an area near those facilities. In *Anderson*, the Supreme Court of Missouri found that the conclusion to be drawn from *Wilson* was that the "only way to avoid inconsistent application of the Act . . . is to interpret the word 'charge' as *an actual admission price paid for permission to enter the land* at the time of its use for recreational purposes." *Anderson*, 463 S.W.3d at 787 (quoting *Wilson*, 989 F.2d at 957) (quoting *Genco v. Connecticut Light and Power Co.*, 7 Conn.App. 164, 508 A.2d 58, 62 (1986)) (emphasis in *Wilson*).

Similarly here, Plaintiff was not required to pay to enter the Osage Bluff Campground, and he and his father could have freely walked onto or used the ramp and dock without paying any fee had they not chosen to launch a vessel.

Plaintiff attempts to distinguish the facts here from those in *Wilson*, arguing the decedent in *Wilson* was not engaged in the activity for which he paid the fee when he was injured, whereas here Plaintiff was assisting his father to launch a boat from the ramp into the water when he slipped on the dock, which is the very activity that the fee was paid for. In short, the fee they paid necessarily authorized them to enter the dock and boat ramp, because they could not launch the boat absent entry. Plaintiff's argument, however, under the specific facts of this case is precluded by *Moss v. United States* 895 F.3d 1091 (8th Cir. 2018). In *Moss*, the plaintiffs argued that the $16 campsite fee was an admission fee that charged the plaintiffs for their recreational use of the camping area, and therefore was an entrance fee. Even though seventeen campers perished in a flood that swept over the campsite area and it was alleged they died because of the defendant's negligence, the Eighth Circuit reasoned that even though "Plaintiffs focus on the fact they were injured while camping—the exact activity for which they paid the use fee," the Arkansas Recreational Use Statute "by its plain terms, removes immunity only when a fee is charged to enter a particular area. Fees subsequent to entry, such as charges to access services such as water or electrical hookups, do not alter the initial grant of immunity. Those fees are not required for 'entrance' to the relevant parcel of land." *Id*. at 1099. Although a $16 campsite fee was charged, "the $16 overnight campsite fee was solely for access to particular campsite services and [] campers who didn't pay the fee could still access Loop D." *Id*. Therefore, the campsite fee was not a fee for entry. *Id*. Though interpreting a different state's recreational use statute, the Eighth

10

Circuit's analysis in *Moss* requires the same result here, because any slight difference in the language of the Missouri RUA does not prevent the reasoning of *Moss* from being applicable here.

Plaintiff cites to the Missouri Court of Appeals decision in *Lonergan* for the proposition that the RUA "relieves the landowner of any duty to keep his land safe so long as the owner does not charge a user fee." *Lonergan v. May*, 53 S.W.3d 122, 127 (Mo. Ct. App. 2001). However, there was no fee imposed at all in *Lonergan*, and therefore the Missouri Court of Appeals' analysis of a "charge" was limited to the statement that the decedent "went to the lake, owned by [defendant], with a boat, and entered the lake for recreational use purposes free of charge." *Id*. at 128. The Court cannot interpret the *Lonergan* court's statement of law describing a "user fee" to indicate that *any* "user fee" constitutes a charge under the RUA.

Plaintiff also cites to *Plano v. City of Renton*, 14 P.3d 871 (Wash. App. 2000), a case wherein the Washington Court of Appeals determined the state recreational use immunity did not apply to Defendant who charged a fee for overnight moorage at the city park moorage dock. However, the Washington statute unambiguously provides that immunity only applies to landowners who open their land to the public for recreational use "without charging a fee of any kind." *Id*. at 912 (quoting Wash. Rev. Code § 4.24.210). The Missouri RUA does not define a charge so broadly, but rather explicitly limits it to an "admission price or fee." Therefore the *Plano* analysis does not apply.

While Plaintiff makes a powerful argument for her reasonable interpretation of the RUA, binding precedent requires the Court to find that the fee here to launch a boat or vessel from Defendant's boat ramp is not an admission price or fee charged for entry. Plaintiff expresses concern that finding for the Defendant here "would effectively forever immunize landowners from any liability regardless of the charges they impose for use of land, unless they set up fixed

11

admission booths at the entrance to property." Doc. 18, p. 12. The Court shares the same concerns regarding expanding immunity, but the Court's holding here is not so broad. It is not holding that there is immunity when a discrete area on the property is closed to the public unless a use fee is paid. As for the wisdom of the RUA, only the state legislature can address these public policy concerns.

USACE is immune from liability under the RUA, and the FTCA does not waive Defendant's sovereign immunity. Therefore, the Court is without subject matter jurisdiction to consider the merits of Plaintiff's claim.

## IV. CONCLUSION

For the reasons discussed above, Defendant's motion to dismiss is GRANTED.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: April 10, 2020
Jefferson City, Missouri